UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE RIOS,<br><br>                    Plaintiff,<br><br>-against-<br><br>MAX MARA USA INC. AND JEFFREY<br>FONSECA,<br><br>                    Defendants. | No. 23-CV-9839 (LAP)<br><br><u>OPINION AND ORDER</u> |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendants Max Mara USA Inc. ("Max Mara") and Jeffrey Fonseca's (collectively, "Defendants") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (<u>See</u> Motion for Judgment on the Pleadings, dated August 16, 2024, dkt. no. 35 ["12(c) Motion" or "Motion"].)[1] Plaintiff Nicole Rios ("Plaintiff") opposes the Motion. (<u>See</u> Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings, dated September 5, 2024, dkt. no. 39 ["Pl. Opp."].)  For the reasons stated below, Defendants' Motion is GRANTED.

---

[1] (<u>See</u> <u>also</u> Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c), dated August 16, 2024, dkt. no. 36 ["Defs. Br."]; Declaration of Amy J. Traub Esq. in Support of Defendants' Motion for Judgment on the Pleadings, dated August 16, 2024, dkt. no. 37 ["Traub Decl."]; Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c), dated September 25, 2024, dkt. no. 42 ["Defs. Reply"].)

I.  **Background**[2]

   **A. Factual Background**

   On December 5, 2022, Plaintiff began working for Defendant Max Mara as a junior staff accountant.  (See Complaint ¶ 10, dkt. no. 7 ["Compl."].)  That same day, Plaintiff began training for her new role under the supervision of Mr. Jeffery Fonseca, a senior staff accountant.  (See Ex. C to the Traub Decl., dkt. no. 37-3 ["Ex. C"] at 1.)

   Two days after Plaintiff commenced her new job, on December 7, she was working on her computer when Fonseca looked at her and yelled "pornstar."  (See id.; see also Compl. ¶ 11.)  At the time, Fonseca was standing next to another employee, Mr. Federico Andreoli.  (See Ex. C at 1.)

   The following day, on December 8, Fonseca again yelled "pornstar" while Plaintiff was working at her desk.  (See id.; see also Compl. ¶ 13.)  Plaintiff looked up and saw Andreoli put his hands on Fonseca and shake him, looking upset.  (See Ex. C at 1.)

   On December 9, Fonseca, Plaintiff, and a female colleague were discussing the upcoming workplace holiday party.  (See id.; Compl. ¶ 14.)  Fonseca told Plaintiff he intended to do cocaine at the party and then put his head near Plaintiff's breasts and

---

[2] The facts in this opinion are drawn primarily from the Complaint and documents integral to the Complaint of which this Court takes judicial notice.  (See infra Part II(B) (outlining standard for incorporating extrinsic documents).)

pretended to "motorboat" her, shaking his head back and forth. (See Compl. ¶ 14.)

On or about December 11, Plaintiff reported Fonseca's behavior directly to Max Mara's Human Resources ("HR") manager and HR director. (See id. ¶ 15; Ex. C at 1.) Plaintiff was assured that there would be an investigation and that Max Mara's zero-tolerance policy would be enforced. (See Ex. C at 1.) Afterwards, Plaintiff reported the behavior to the head of her department and Chief Financial Officer ("CFO"), Mr. Christian Macchia, who assured her that he and HR would speak with Fonseca about his conduct. (See id.) In response to Plaintiff's concerns about continuing to work with Fonseca, Macchia told Plaintiff that she could work in either Accounts Payable or the Treasury department, to which Plaintiff replied that she would prefer the Treasury department. (See id.; see also Compl. ¶¶ 17-18.)

On or about December 14, Max Mara announced Macchia's resignation. (See Ex. C at 2; see also Compl. ¶ 19.) Plaintiff's potential transfer to another department was not discussed after this point. (See Compl. ¶ 19.) The same day, Max Mara's HR manager and HR director held a meeting with Plaintiff to follow up on her report. (See Ex. C at 2.) During the meeting, Plaintiff was told Fonseca was aware of her complaint and wished to apologize, which Plaintiff declined. (See id.) Plaintiff then thanked the HR representatives for following up on the matter.

(See id.)  Over the next few weeks, Max Mara did not inquire any further into Plaintiff's report.  (See id.)  Fonseca continued his role as Plaintiff's trainer and supervisor.  (See id.)

On January 10, 2023, Fonseca stated that his old co-worker was becoming Max Mara's new CFO, said he was "relieved, this [was] a good thing for [him]," and laughed about it to Plaintiff.  (Id.) Pursuant to Max Mara's employee handbook policy for employees dissatisfied with HR investigations, Plaintiff emailed Mr. Cristian Notari, Max Mara's Chief Executive Officer ("CEO"), to report Fonseca's behavior.  (See id.; Compl. ¶ 24; Ex. B to the Traub Decl., dkt. no. 37-2 ["Ex. B"] at 1.)  The following day, January 11, Notari responded to Plaintiff's email by indicating that he understood the HR investigation to be complete and the complaint resolved.  (See Ex. B at 1; see also Ex. C at 2.)  He encouraged Plaintiff to reach back out to HR with any new complaints.  (See Ex. B at 1.)

On January 13, Plaintiff sent an email to the entire Max Mara New York office that began as follows:

> @Cristian Notari maybe someone else in MaxMara will be able to help me since you refuse to.
>
> **Today 10:37AM (CURRENTLY): Mr. Fonseca just put his hand on my shoulder while I am writing this email.  I was going to attach[] supporting documents but will be leaving in response to this.  I am leaving and will be sending this email to anyone from Italy MaxMara that [I] can reach in addition to New York State[.]**
>
> The misogynist behavior MaxMara has made me endure is

> illegal and I will not be speaking to anyone until a
> written statement is submitted to myself by HR
> regarding the behavior I have been subjected to from
> my colleagues to me during my time working here . . . .

(Ex. C at 1; see also Compl. ¶ 27.)  Later that same day, Max Mara

sent Plaintiff a letter informing her that the company "[took her]

email dated January 13, 2023 to Max Mara's NY Office distribution

list as notice of [her] resignation, which we accept."  (Ex. D to

the Traub Decl., dkt. no. 37-4 ["Ex. D"]; see also Compl. ¶ 30.)

## B.  Procedural History

On about February 13, 2023, the New York State Division of

Human Rights (NYSDHR) sent Max Mara a copy of the complaint

Plaintiff had filed against the company alleging discrimination on

the basis of "gender identity or expression, marital status,

race/color, [and] sex."  (Ex. E to the Traub Decl., dkt. no. 37-5

["Ex. E"] at 5.)[3]

On November 8, 2023, Plaintiff filed a Complaint against

Defendants in this Court.  (See Compl.)

---

[3] Plaintiff does not state whether she was issued a right-to-sue
letter following NYSDHR's investigation and Defendants do not
object to Plaintiff's failure to attach such letter.  However,
"'[a] plaintiff's failure to obtain a notice-of-right-to-sue-
letter is not a jurisdictional bar, but only a precondition to
bringing a Title VII action that can be waived by the parties or
the court[,]" and "a failure to obtain a right-to-sue letter can
be excused by the Court on equitable grounds."  Syeed v.
Bloomberg L.P., 2022 WL 3447987, at *3 (S.D.N.Y. Aug. 17, 2022)
(quoting Pietras v. Bd. of Fire Comm'rs of Farmingville Fire
Dist., 180 F.3d 468, 474 (2d Cir. 1999)).  Here, the Court
concludes that Plaintiff's failure to state whether she received
a right-to-sue letter does not bar her claim.

On August 16, 2024, Defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See 12(c) Motion.)

## II. Legal Standards

### A. Pleading Standard Under Rule 12(c)

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Furthermore, the Court of Appeals has held that "[t]he standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 301 (2d Cir. 2021) (quoting Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020)).

"To survive a Rule 12(c) motion, [the] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). The Court "accept[s] all factual allegations in the complaint as true and draw[s] all reasonable inferences in [the plaintiff's] favor." Id. "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (cleaned up). However, "[j]udgment on the pleadings is not appropriate if

6

there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." Lively, 6 F.4th at 301 (quoting Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp., 933 F.3d 751, 761 (D.C. Cir. 2019)).

### B.    Incorporation of Extrinsic Documents

In support of their 12(c) Motion, Defendants attach five documents for the Court's consideration. (See Traub Decl. ¶¶ 3-7; Exs. A-E.)

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (quotation marks omitted). Specifically, the Court "may take judicial notice of the records of state administrative procedures, as these are public records . . . ." Evans v. N.Y. Botanical Garden, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002); see also Kavowras v. New York Times Co., 328 F.3d 50, 57 (2d Cir. 2003) (rejecting argument that District Court erred in taking judicial notice of a National Labor Relations Board document); Scarborough v. United States Sec. Assocs., 2019 WL 3369456, at *1 (S.D.N.Y. July 26, 2019) (taking judicial notice of a NYSDHR complaint).

A complaint includes "any written instrument attached to it

as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). Even when a document is not incorporated by reference, if the complaint "relies heavily upon its terms and effect," it is "integral" and a court may take judicial notice at this stage. Id. at 153. However, a court may only consider such a document where a plaintiff actually "reli[ed] [on] the terms and effect of [the] document in drafting the complaint . . . ; mere notice or possession is not enough" to entitle it to judicial notice. Id. (emphasis omitted). Additionally, "if a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." TufAmerica, Inc. v. Diamond, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (citation omitted).

### C. Discrimination

Plaintiff's first, second, and third causes of action are claims for employment discrimination on the basis of sex under Title VII, the NYSHRL, and the NYCHRL, respectively. (See Compl. ¶¶ 31-62.)

Plaintiff's Title VII discrimination claim, asserted only against Defendant Max Mara, is explicitly premised on a theory of disparate impact. (See Compl. ¶ 35.) While not explicit in

Plaintiff's complaint, her brief in opposition to this motion seems to include theories of disparate treatment and hostile work environment under Title VII. (See Pl. Opp. at 6-9.) Therefore, the Court will construe Plaintiff's Title VII claims to assert theories of disparate impact, disparate treatment, and hostile work environment. Plaintiff's NYCHRL and NYSHRL discrimination claims, asserted against both Defendants, appear to be premised on theories of disparate treatment and hostile work environment. (See Compl. ¶¶ 44, 56.)

1. Disparate Impact

Under Title VII, a plaintiff may sue for "'practices that are fair in form, but discriminatory in operation' - that is, practices that have a 'disparate impact.'" Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020) (quoting Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971)). At the outset of a disparate impact claim, a plaintiff "must at least set forth enough factual allegations to plausibly support" each of the following steps: "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." Id. at 207, 209 (quoting Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 151 (2d Cir. 2012)). "Unlike a disparate treatment claim, however, a disparate impact claim does not require the plaintiff to show that the defendant intended to discriminate against a particular group."

9

Id. at 207 (citing Ricci v. DeStefano, 557 U.S. 557, 578 (2009)). Disparate impact claims are usually proven through statistical evidence that shows a disparity in outcome between groups. Id. at 209 (citing Watson v. Fort Worth Bank & Tr., 487 U.S. 977, 987 (1988)). This is applicable even at the pleadings stage, where "the statistics must plausibly suggest that the challenged practice actually has a disparate impact." Id. at 210 (citing Adams v. Indianapolis, 742 F.3d 720, 733 (7th Cir. 2014)).

### 2. Disparate Treatment Discrimination

Turning first to the NYCHRL discrimination claim, N.Y.C. Admin. Code § 8-107(1)(3) makes clear that it is an "unlawful discriminatory practice" for an employer to discriminate against an employee on the basis of gender "in compensation or in terms, conditions or privileges of employment." To state a discrimination claim under the NYCHRL, "the plaintiff need only show differential treatment—that she is treated 'less well'— because of a discriminatory intent." Szewczyk v. Saakian, 774 F. App'x 37, 38 (2d Cir. 2019) (summary order) (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013)). This means that "[t]he NYCHRL does not require that a plaintiff prove an adverse employment action." Ojeda v. Schrager, 2024 WL 2138038, at *4 (S.D.N.Y. May 13, 2024) (citations omitted). However, courts "must be mindful that the NYCHRL is a not a general civility code." Szewczyk, 774 F.

App'x at 38.  For Plaintiff's NYCHRL claim to survive, she must allege "differential treatment that is 'more than trivial, insubstantial, or petty.'"  Torre v. Charter Comm'cns, Inc., 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020) (quoting Gorman v. Covidien, LLC, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015)).  She must also allege that her gender "'was one of the motivating factors, even if it was not the sole motivating factor, for' her unequal treatment."  Doolittle v. Bloomberg L.P., 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023) (quoting Melman v. Montefiore Med. Ctr., 946 N.Y.S.2d 27, 40 (1st Dep't 2012)).

Under the NYSHRL, Section 296(1) renders it unlawful "[f]or an employer . . . because of an individual's . . . sex . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. Law § 296(1)(a). Following the New York legislature's 2019 amendment to the NYSHRL, see N.Y. Exec. Law § 300, courts must now scrutinize discrimination claims brought pursuant to the NYSHRL under a lenient pleading standard similar to the standard for NYCHRL discrimination claims.  See Doolittle, 2023 WL 7151718, at *7.[4]

---

[4] The 2019 amendment stated that the existing NYSHRL provisions relating to discrimination claims should be "construed liberally" regardless of how analogous federal pleading standards have been construed, N.Y. Exec. Law § 300, reversing the prior practice of analyzing NYSRHL employment discrimination claims under the same standard as Title VII.  See, e.g., Helmes

Finally, turning to Plaintiff's Title VII discrimination claim, Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  When faced with a Title VII discrimination claim, courts engage in the three-step burden shifting framework the Supreme Court laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  See Buon v. Spindler, 65 F.4th 64, 78 (2d Cir. 2023) (citing Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015)).

Under this framework, a plaintiff must first establish her prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination."  Bart v. Golub Corp., 96 F.4th 566, 570 (2d Cir. 2024).  If the plaintiff succeeds, the burden then shifts

---

v. South Colonie Cent. School Dist., 564 F.Supp.2d 137, 152 (N.D.N.Y. 2008).  While some courts have noted it is unclear if the 2019 amendment made the NYCHRL and NYSHRL pleading standards the same, see Shaughnessy v. Scotiabank, 2024 WL 1350083, at *10 (S.D.N.Y. March 29, 2024); Nezaj v. PS450 Bar & Rest., 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024), other courts have treated the standards as aligned, see Wright v. City of New York, 2024 WL 3952722, at *6 (S.D.N.Y. Aug. 27, 2024).

to the employer to "articulate some legitimate,
nondiscriminatory reason for its adverse action." Id. (quoting
Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 83 (2d
Cir. 2015) (internal quotation marks omitted)).  "Upon that
showing, the burden then shifts back to the plaintiff to prove
that the employer's stated reason was pretext for
discrimination." Id.  In proving pretext, the plaintiff is only
required to show that "an impermissible criterion was a
motivating factor in the employer's decision to take the adverse
action." Id.; see also Cronin v. Aetna Life Ins. Co., 46 F.3d
196, 203 (2d Cir. 1995) ("[T]he plaintiff is not required to
show that the employer's proffered reasons were false or played
no role in the employment decision, but only that they were not
the only reasons and that the prohibited factor was at least one
of the motivating factors." (internal quotation marks omitted)).

    What Plaintiff must do to establish her prima facie case
differs depending on the stage of the case.  See Littlejohn, 795
F.3d at 307.  At the pleading stage, the Court does not
"'require a plaintiff to plead facts establishing a prima facie
case.'"  Buon, 65 F.4th at 79 (quoting Swierkiewicz v. Sorema
N.A., 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).
Instead, "absent direct evidence of discrimination," Plaintiff
must plead facts sufficient to show that she "(1) is a member of
a protected class, (2) was qualified, (3) suffered an adverse

employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Id. (cleaned up).

3. Hostile Work Environment

Under the NYCHRL, there "are not separate standards" for hostile work environment and disparate treatment claims. Johnson v. Strive E. Harlem Emp. Grp., 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014). Instead, "the former is subsumed within the latter[.]" Rothbein v. City of N.Y., 2019 WL 977878, at *9 n.12 (S.D.N.Y. Feb. 28, 2019). Accordingly, the Court applies the same lenient pleading standard to NYCHRL hostile work environment claims that it uses to assess disparate treatment claims brought pursuant to the NYCHRL. See id. Thus, as is the case for disparate treatment claims, all a plaintiff must do to survive a motion to dismiss a hostile work environment claim under the NYCHRL is allege she was treated "less well" due to her "membership in a protected class." Bautista v. PR Gramercy Square Condominium, 642 F. Supp. 3d 411, 427 (S.D.N.Y. 2022) (internal quotations and citations omitted).[5]

Similarly, pursuant to the 2019 amendments to the NYSHRL, stating a hostile work environment claim under NYSHRL now requires only that the plaintiff plead sufficient facts showing

---

[5] The same standard applies to a motion for judgment on the pleadings. See Lively, 6 F.4th at 301.

she was "subjected to inferior terms, conditions, or privileges
of employment" due to her membership in a protected class.
Samuels v. City of New York, 2023 WL 5717892, at *9 (S.D.N.Y.
Sept. 5, 2023).  Plaintiff's pleading requirements are thus
identical to those she bears to sustain her NYSHRL disparate
treatment theory.

       Turning to Plaintiff's Title VII hostile work environment
claim, Title VII's "prohibition of sex discrimination extends to
sexual harassment, which encompasses conduct that has the purpose
or effect of . . . creating an intimidating or hostile work
environment."   Moll v. Telesector Res. Grp., Inc., 94 F.4th
218, 228 (2d Cir. 2024) (quoting Petrosino v. Bell Atlantic, 385
F.3d 210, 220-21 (2d Cir. 2004)) (internal quotation marks
omitted).  "To establish a hostile work environment under Title
VII . . . a plaintiff must show that 'the workplace is permeated
with discriminatory intimidation, ridicule, and insult that is
sufficiently severe or pervasive to alter the conditions of the
victim's employment and create an abusive working environment.'"
Littlejohn, 795 F.3d at 320-21 (quoting Harris v. Forklift Sys.,
Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).  A
plaintiff must satisfy both an objective and a subjective standard.
Id. at 321.  She must show misconduct "severe or pervasive enough
to create an objectively hostile or abusive work environment" and
that she "subjectively perceive[d] the environment to be abusive."

15

Moll, 94 F.4th at 229 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)) (internal quotation marks omitted). Determining the objective element requires a court to consider "all the circumstances," which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Harris, 510 U.S. at 23). "[T]he crucial inquiry focuses on the nature of the workplace environment as a whole . . . ." Kaytor v. Electric Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010) (emphasis and internal quotation marks omitted). In addition, "a plaintiff must show 'a specific basis . . . for imputing the conduct that created the hostile work environment to the employer.'" Williams v. N.Y.C. Hous. Auth., 61 F.4th 55, 69 (2d Cir. 2023) (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 72 (2d Cir. 2000).

### D. Retaliation

Plaintiff's fourth, fifth, and sixth causes of action are claims for retaliation under Title VII, the NYSHRL, and the NYCHRL, respectively. (See Compl. ¶¶ 63-81.) Plaintiff's Title VII claim is asserted only against Defendant Max Mara, (see id. ¶¶ 63-71), while the NYSHRL and NYCHRL claims are asserted against both Defendants, (see id. ¶¶ 72-81).

The Court analyzes retaliation claims brought under Title

16

VII under the uniform burden-shifting framework set forth by the
Supreme Court in McDonnell Douglas.  See Littlejohn, 795 F.3d at
315 (citing Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)).
Under this standard, surviving a motion to dismiss or motion for
judgment on the pleadings requires that the complaint plausibly
allege that (1) the plaintiff participated in a protected
activity; (2) the defendant knew of the protected activity;
(3) the plaintiff suffered an adverse employment action; and
(4) there is a causal connection between the plaintiff's
protected activity and the adverse employment action she
suffered.  See id. at 315-16; see also Vega, 801 F.3d at 87.
"As in the discrimination context, a defendant may rebut a prima
facie showing of retaliation by providing a legitimate, non-
retaliatory reason for the allegedly retaliatory action."  Carr
v. N.Y.C. Transit Auth., 76 F.4th 172, 178 (2d Cir. 2023)
(citing Chen v. City Univ. of N.Y., 805 F.3d 59, 70 (2d Cir.
2015)).  After such a showing, "the presumption of retaliation
dissipates, and the plaintiff must prove that the desire to
retaliate was the but-for cause of the challenged employment
action."  Id.

    "Complaining to a supervisor, instituting litigation, or
filing a formal complaint" about discriminatory conduct are each
considered protected activities.  Moore v. Hadestown Broadway
LLC, 2024 WL 989843, at *6 (S.D.N.Y. March 7, 2024) (citing Ruiz

17

v. City of N.Y., 2015 WL 5146629, at *6 (S.D.N.Y. Sept. 2, 2015).  A complaint to a supervisor need not have had merit to make it a protected activity.  See Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012).  Instead, an employee's complaint only must be "sufficiently pointed to be reasonably understood as a complaint [about] discrimination." Cardwell v. Davis Polk & Wardwell LLP, 2020 WL 6274826, at *31 (S.D.N.Y. Oct. 24, 2020) (internal quotations and citations omitted).  Thus, a plaintiff satisfies the second prong of the retaliation pleading standard if her complaint plausibly alleges that such protected activity put the defendant "on notice that [plaintiff's] complaints were about . . . discrimination, not just general unsatisfactory or unfair conduct." Id. (internal quotations and citations omitted).

Adverse employment actions include "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Vega, 801 F.3d at 90 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)).  Termination qualifies as an adverse employment action.  See, e.g., Cadet v. All. Nursing Staffing of N.Y., Inc., 632 F. Supp. 3d 202, 226-28 (S.D.N.Y. 2022) (plausible allegation of "an adverse employment action like termination" is sufficient to survive a motion to dismiss a retaliation claim).

18

A plaintiff can plausibly allege her participation in a protected activity caused her adverse employment action either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Littlejohn, 795 F.3d at 319 (citation omitted).

As is the case for discrimination claims, Plaintiff shoulders a more relaxed burden to plead a sufficient retaliation claim under the NYCHRL and the NYSHRL. See McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020) ("Retaliation claims under the NYCHRL are subject to a broader standard than under . . . Title VII."); see also Arazi v. Cohen Bros. Realty Corp., 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) (noting the "NYCHRL's more liberal pleading standard applies" to NYSHRL retaliation claims following the 2019 statutory amendments).[6]  A complaint alleging retaliation under this more lenient standard need not plead that the plaintiff

---

[6] Similar to the pleading standards for discrimination claims under the NYSHRL and NYCHRL, there is some disagreement regarding the pleading standards for retaliation under the two statutes.  See Shaughnessy, 2024 WL 1350083, at *12 (noting that "the NYCHRL applies a more lenient standard" than the standard for NYSHRL retaliation claims).

suffered an adverse employment action.  McHenry, 510 F. Supp. 3d at 67.  Instead, a plaintiff is only required to "'show that something happened that was reasonably likely to deter a person from engaging in protected activity.'"  Id.  (quoting Xiang v. Eagle Enters., LLC, 2020 WL 248941, at *9 (S.D.N.Y. Jan. 16, 2020)); see also Arazi, 2022 WL 912940, at *17.  A plaintiff's burden to allege plausibly the other three prongs necessary to state a prima facie retaliation claim under Title VII remains the same for NYCHRL and NYSHRL claims.  McHenry, 510 F. Supp. 3d at 67 (citing Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012)); see also Arazi, 2022 WL 912940, at *17.

## III.  Discussion

### A.  Defendants' Introduction of Extrinsic Documents

Defendants attached five exhibits to their motion: (1) a summary report of the investigation conducted by Max Mara into Plaintiff's complaints about Defendant Fonseca's behavior, dated December 14, 2022 (Ex. A to the Traub Decl., dkt. no. 37-1 ["Ex. A"]); (2) an email exchange between Max Mara's CEO and Plaintiff over January 10-12, 2023 (Ex. B); (3) the email Plaintiff sent to Max Mara's New York office chronicling the alleged discriminatory behavior she faced while at the company and stating "I'm leaving," dated January 13, 2023 (Ex. C); (4) Max Mara's letter accepting Plaintiff's resignation, dated January 13, 2023 (Ex. D); and (5) a

20

letter from the NYSDHR enclosing Plaintiff's NYSDHR Complaint, dated February 13, 2023 (Ex. E).

According to Defendants, Plaintiff "refers" to Exhibits A-D in various parts of the Complaint or, in the alternative, relies on them to such a degree that they are "integral." (See Traub Decl. ¶¶ 3-6.; Defs. Br. at 2, 8.) Regarding Exhibit E, Defendants argue that the Court may take judicial notice because it is a relevant state administrative record. (See Defs. Br. at 7 n.4.)

In addition, Defendants argue the Court should reject allegations "contradicted by the documents that are integral to or relied upon in the Complaint." (Id. at 2 n.2; see id. at 11-12.) Specifically, Defendants contend Plaintiff's allegations that Fonseca called her a "pornstar" and pretended to "motorboat" her contradict her initial complaints to HR and the NYSDHR, as these allegations appear for the first instance in her instant Complaint. (See id. at 1, 11-12.)

The Court will address each proposed exhibit in turn. Plaintiff neither references nor relies on Exhibit A, the summary report of Max Mara's investigation into Plaintiff's complaints, in her Complaint. It would have been impossible for Plaintiff to have done so because there is no indication that she was in possession of the report until Defendants produced it in this action, after the April 16, 2024 Initial Pretrial Conference. (See Traub Decl. ¶ 3.) Even if Plaintiff had possession of Exhibit A

prior to Defendants' production, "mere . . . possession is not enough for a court to treat an extraneous document as integral to a complaint[.]" Deluca v. AccessIT Group, Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y 2010) (quoting Chambers, 282 F.3d at 153) (internal quotations omitted). A document is integral when a plaintiff's reliance on it fundamentally shaped the complaint's allegations such that omitting it would render the pleadings "materially different." See Carrico v. Duo Wen, Inc., 2024 WL 3965839, at *3 (S.D.N.Y. Aug. 27, 2024) (quoting List v. Fashion, 340 F.2d 457, 463 (2d Cir. 1965). In her Complaint, Plaintiff alleges that (1) "HR was investigating her complaints"; (2) "witnesses were not interviewed"; (3) "Mr. Fonseca was not disciplined in any way"; (4) "at the conclusion of the alleged investigation, Plaintiff was informed that Mr. Fonseca wanted to apologize to her"; and (5) the investigation produced a "lack of results and [a] lack of discipline to her supervisor." (Compl. ¶¶ 21-23.)

These allegations would be no different if Exhibit A were omitted because they can be substantiated by Exhibit C alone, Plaintiff's January 13, 2023 email to Max Mara's New York office. (See Ex. C at 1-2.) Because Exhibit A's exclusion would not result in "materially different" pleadings, the Court does not take judicial notice of Exhibit A at this stage. See Jacobson v. Conflict Int'l, Inc., 2024 WL 1348863, at *4 (S.D.N.Y. Mar. 29,

2024) ("Even if the referenced document is relevant, the court may not consider it based on a plaintiff's 'limited and indirect citations.'" (quoting In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 299 n.39 (S.D.N.Y. 2008)).

The Court may take notice of Exhibits B and C, Plaintiff's emails to Max Mara's CEO and the New York Office, because Plaintiff explicitly references them in the Complaint, (see Compl. ¶¶ 23-24, 27, 29), and both emails are integral to her retaliation claims, (see Compl. ¶¶ 67, 74, 79). Plaintiff's emails are the primary evidence that she engaged in protected activity—namely, filing a complaint with her supervisor—which Plaintiff relies on to establish her retaliation claims under Title VII, the NYSHRL, and the NYCHRL. The Court therefore takes judicial notice of Exhibits B and C.

Exhibit D, Max Mara's letter accepting Plaintiff's resignation, also holds an integral position in the Complaint because Plaintiff explicitly references it, (see Compl. ¶ 30), and because she relies on it to establish her termination—the adverse employment action identified in her federal and state retaliation claims, (see Compl. ¶¶ 74, 79). Moreover, "[i]n employment cases, [] properly considered documents include letters of resignation and termination letters." Catania v. NYU Langone Health Sys., 2022 WL 17539121, at *1 (S.D.N.Y. Dec. 5, 2022) (citing Alexander v. Bd. of Educ. Of City of N.Y., 648 F. App'x 118, 120 n.2 (2d

23

Cir. 2016) (summary order)).  The Court takes judicial notice of Exhibit D.

Finally, the Court will take judicial notice of Exhibit E, Plaintiff's NYSDHR Complaint, because it is a record of a "state administrative procedure."  Evans, 2002 WL 31002814, at *4; see Scarborough, 2019 WL 3369456, at *1; see also Kavowras, 328 F.3d at 57.

Defendants are incorrect in arguing that the Court should disregard Plaintiff's allegations that Fonseca "called her a 'porn star' and 'pretended to "motorboat" her, shaking his head back and forth near her chest.'"  (See Defs. Br. at 2 n.2. (citing Compl. ¶¶ 11, 13-14).)  Courts disregard allegations in the complaint only when they directly contradict the attached or relied upon documents.  See, e.g., DeWitt v. Lieberman, 48 F. Supp. 2d 280, 290 (S.D.N.Y. 1999) (finding later, more serious allegations of sexual harassment to be noncontradictory despite plaintiff's failure to report them); Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 146-47 (2d Cir. 2011) (holding that plaintiff's allegation about disclosure of an "entire database" was contradicted by documents attached to complaint showing limited disclosure); Sander v. Enerco Grp., Inc., 2023 WL 1779691, at *4 (S.D.N.Y. Feb. 6, 2023) (disregarding allegations that a space heater caused a fire where an attached fire department report indicated likely arson and plaintiff did not attempt to reconcile

the conflict).

Plaintiff's allegations are not "directly contradicted" by the documents upon which she relies. While it is notable that Plaintiff did not alert Max Mara's HR department or the NYSDHR of one of the most serious allegations of sexual harassment—the "motorboating" allegation—its absence in her earlier complaints does not inherently contradict its presence in the instant Complaint. (Compare Ex. B at 1, Ex. C at 1, and Ex. E at 8 with Compl. ¶¶ 14.)[7] The Court's responsibility at this stage is to "accept all factual allegations in the complaint as true and draw all reasonable inferences in [Plaintiff's] favor." Hayden, 594 F.3d at 160. In addition, Plaintiff's shift in language—from Fonseca a) "yells 'Pornstar!' (looking at me)" (Ex. C at 1), "yells Pornstar again while I am working" (Ex. C at 1), "yelled pornstar on several occasions in my direction" (Ex. B at 1), and "spoke about pornstars" (Ex. E at 8) to b) "called [Plaintiff] a porn star" (Compl. ¶ 11) and "continued to call Plaintiff a porn star" (Compl. ¶ 13)—is not directly contradictory because these accounts indicate Fonseca targeted Plaintiff with the term "pornstar."[8]

---

[7] Additionally, the Court of Appeals has held that "claims not raised in [a NYSDHR] complaint may still be part of the complaint later filed in federal court 'if they are "reasonably related"' to the claim filed with the agency." Littlejohn, 795 F.3d at 322. Here, Plaintiff's claims are reasonably related to the claims made to NYSDHR and Max Mara's HR department and thus are admissible.
[8] In her email to Max Mara's CEO, Plaintiff explained that Fonseca "made it seem as if he was speaking to Federico." (Ex. B at 1.)

Because Plaintiff's new factual allegations supplement rather than contradict her prior allegations, the Court will not disregard them.

**B.    Plaintiff's Title VII Discrimination Claims**

   1. <u>Disparate Impact</u>

Plaintiff alleges that Max Mara's "policies, practices and procedures" led to a disparate impact on her in violation of Title VII. (Compl. ¶ 35.) This claim is dead on arrival. The Complaint fails to identify any specific employment practice or policy at Max Mara, let alone different treatment of a single other employee. Thus, Plaintiff cannot establish a causal relationship between company practice or policy and employee outcome. Plaintiff fails to plead a disparate impact claim under Title VII. <u>See</u> <u>Mandala</u>, 975 F.3d at 207.

Even if the Court endeavored to identify a specific employment practice or policy in the Complaint, Plaintiff is still far from being able to plead her claim. The only policy Plaintiff identifies in passing is "Defendant's handbook" guidance that "states that if an employee is dissatisfied with an investigation, [he or she] should contact the CEO." (Compl. ¶ 23.) However, without reference to the experience of any other employee following this policy, it is impossible for Plaintiff to show a disparity between groups. <u>See</u> <u>Mandala</u>, 975 F.3d at 209 (describing the role of statistics in pleading disparate impact claims). Defendants'

Motion is granted with respect to Plaintiff's Title VII disparate impact claim.

### 2.   Disparate Treatment

Plaintiff next argues that Max Mara "unlawfully discriminated against [her] in the terms and conditions of her employment on the basis of her sex in violation of Title VII." (Compl. ¶ 34.) Defendants do not dispute that Plaintiff is a member of a protected class and is qualified for her position, satisfying the first two prongs of Plaintiff's prima facie claim. (See Defs. Br. at 9.)

With respect to the third prong, whether Plaintiff suffered an adverse employment action, the Complaint alleges that Plaintiff was "terminated." (Compl. ¶ 75.) Defendants argue that Plaintiff nevertheless fails plausibly to allege an adverse employment action because the documents upon which Plaintiff relied demonstrate that she voluntarily resigned. (See Defs. Br. at 10.) According to Defendants, it was reasonable for Max Mara to interpret Plaintiff's January 13, 2023 email in which she wrote "[I] will be leaving in response to this" and "I am leaving" as her notice of resignation and subsequently accept that resignation. (See id. at 10; Defs. Reply at 2.) Defendants also point out that Plaintiff does not allege that she ever challenged Max Mara's acceptance of her resignation or attempted to return to work. (See Defs. Br. at 7; Defs. Reply at 2.)

Plaintiff contends that when she emailed Max Mara's New

York office on January 13, 2023, writing that she was "leaving in response to this" (Ex. C), she intended to communicate only that she was "leaving for the day." (Compl. ¶ 30; see also Pl. Opp. at 2.) Plaintiff claims that Max Mara "improperly terminated her employment" in response to her email reporting its alleged misconduct. (Compl. ¶ 75.)

The Court concludes that Plaintiff did not suffer an adverse employment action. "[W]hen any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." Zoulas v. N.Y.C. Dep't of Educ., 400 F. Supp. 3d 25, 48 (S.D.N.Y. 2019). Here, a plain reading of Plaintiff's January 13 email demonstrates that Plaintiff resigned from Max Mara, contradicting Plaintiff's allegation that she was terminated. Plaintiff emailed the entire Max Mara New York office a lengthy description of each alleged incident of misconduct she suffered. She wrote that Fonseca had just put his hand on her shoulder and that she had planned to attach documents supporting her claims "but will be leaving in response to this." (See Ex. C at 1 (emphasis added).) Plaintiff added "I am leaving and will be sending this email to anyone from Italy MaxMara that [I] can reach in addition to New York State[.]" (Id. (emphasis added).) Finally, Plaintiff emailed that she would "not be speaking to

anyone" until HR provided her a written statement about the
behavior she was subjected to "during [her] time working here."
(Id.)  Cumulatively, Plaintiff's language makes her intention to
resign clear.  In addition, Plaintiff does not allege that,
until the instant action, she ever disputed that she resigned or
attempted to return to work after receiving a letter from the
company accepting her resignation.  See Cadet v. Deutsche Bank
Sec. Inc., 2013 WL 3090690, at *13 (S.D.N.Y. June 18, 2013)
("[I]t is not an adverse employment action-for the purposes of a
discrimination claim or a retaliation claim-for an employer to
take the employee at his word that he wants out . . . .")[9]
Plaintiff's failure to plausibly allege an adverse employment

---

[9] While courts considering disputes over whether a plaintiff
voluntarily resigned or was terminated in the context of summary
judgment have found the dispute presented an issue of material
fact, none of these cases involved the instant situation, where
documents upon which the plaintiff relied on in her complaint
plainly contradict the allegation that she was terminated.  See
Bogden-Cozmuta v. Granby Urgent Care, LLC, 2022 WL 4585442, at *8
(D. Conn. Sep. 29, 2022) (denying summary judgment on Fair Labor
Standards Act retaliation claim based on material issue of fact
over whether employee intended to resign when his text read "due
to unforeseen circumstances I will be unable to be at work tomorrow
and after tomorrow"); Burton v. Teleflex Inc., 707 F.3d 417, 428,
430 (3d Cir. 2013) (vacating summary judgment where plaintiff
"maintain[ed] that she did not resign . . . and that she never
told anyone that she had resigned" and there was "sufficient
evidence from which a reasonable juror could conclude that
[plaintiff] was terminated"); Fetcho v. Hearst Connecticut Post,
LLC, 103 F. Supp. 3d 207, 212 (D. Conn. 2015) (determining
plaintiff established a termination for purposes of summary
judgment where defendant and plaintiff disputed whether plaintiff
verbally agreed to resign).

action is fatal to her claim.

Even assuming that Plaintiff had sufficiently pled an adverse employment action, Plaintiff fails to allege any facts suggesting Max Mara acted with discriminatory intent. "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse action]." Littlejohn, 795 F.3d at 312 (citation omitted). The Complaint does not plead any facts whatsoever to suggest Max Mara discharged Plaintiff for any reason other than its belief that she voluntarily resigned. Plaintiff herself alleges that Max Mara "interpreted Plaintiff's e-mail" as her "leaving the company, rather than leaving for the day, as Plaintiff intended, and sent a letter accepting her resignation." (Compl. ¶ 30.) Accordingly, Plaintiff fails sufficiently to allege disparate treatment under Title VII, and Defendants' Motion is granted with respect to Plaintiff's Title VII disparate treatment claim.

### 3. Hostile Work Environment

Plaintiff appears to allege a hostile work environment based on Fonseca's behavior toward her, specifically his use of

30

the word "pornstar" near or toward her on multiple occasions and his "motorboating" gesture.  (See Pl. Opp. at 3; Ex. B at 2; Ex. C at 1.)  Defendants argue that these facts fail to suggest conduct that was "objectively severe or pervasive" and thus Plaintiff fails to plead a hostile work environment claim under Title VII.  (Defs. Br. at 14.)  The Court agrees with Defendants and finds judgment on the pleadings against Plaintiff on this cause of action is warranted.

While Plaintiff has demonstrated that she subjectively perceived the environment to be abusive, her allegations lack proof of the severe, pervasive, and unreasonably interfering misconduct required by the objective element.  Moll, 94 F.4th at 229.  Plaintiff's communications to Notari and the email she sent to the New York office establish that she "subjectively perceive[d] the environment to be abusive."  Id. (quoting Harris, 510 U.S. at 21); (see also Compl. ¶ 18; Ex. B at 1-2; Ex. C at 1-2.)  However, her allegations that Fonseca called her "a porn star" over the course of three days and pretended to "motorboat" her do not constitute "a series of incidents []  sufficiently continuous and concerted to have altered the conditions of her working environment."  Alfano v. Costello, 294 F.3d 365, 374 (2d. Cir. 2002) (internal quotations and citations omitted); see also Zeng v. New York City Hous. Auth., 2023 WL 4553416, at *2 (2d Cir. July 17, 2023) (summary order).

First, Fonseca's obscene name-calling occurred only a few times over three days and ceased after being promptly addressed by Max Mara HR.  (See Compl. ¶¶ 10-13, 15; Ex. C at 1); see also Doyle v. Am. Glory Rest. Corp., 2024 WL 1466161, at *6 (S.D.N.Y. Apr. 4, 2024) ("The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct.") (citation omitted).  Without more, the Court is hard pressed to conclude that these isolated comments were "sufficiently continuous and concerted" to rise to the level of "pervasive" harassment.  Williams, 61 F.4th at 69 (quoting Alfano, 294 F.3d at 374).  Moreover, after Max Mara's HR department immediately addressed Fonseca's behavior, the name-calling appears to have stopped altogether.  (See Compl. ¶¶ 10-13, 15; Ex. C at 1-2.)  This context cuts against "imputing the conduct" to Max Mara.  Williams, 61 F.4th at 69 (quoting Whidbee, 223 F.3d at 72).

Second, Fonseca's act of shaking his head near Plaintiff's breasts, while unquestionably reprehensible, is not serious or pervasive enough to sustain a claim of a hostile work environment.  (See Compl. ¶ 14.)  For a single incident to create a hostile work environment, it "must have been 'extraordinarily severe' and therefore this standard is reserved only for the most egregious conduct."  Agosto v. N.Y.C. Dep't of

Educ., 982 F.3d 86, 103 (2d Cir. 2020) (quoting Desardouin v.
City of Rochester, 708 F.3d 102, 105 (2d Cir. 2013)).
Individual acts that have risen to the level of extraordinarily
severe include rape, Ferris v. Delta Air Lines, Inc., 277 F.3d
128, 136 (2d Cir. 2001), or when a plaintiff was "punched in the
ribs," "temporarily blinded by having mace sprayed in his eyes,"
and "covered . . . with shaving cream" while subjected to
"racially offensive comments," Patterson v. Cty. of Oneida,
N.Y., 375 F.3d 206, 213, 230 (2d Cir. 2004).  In comparison, the
Court of Appeals has found insufficient evidence of a hostile
work environment where a plaintiff's coworker (1) made a
sexualized comment about her body and (2) "deliberately touched
[her] breasts with some papers that he was holding in his hand."
Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir.
1998), abrogated on other grounds by Nat'l R.R. Passenger Corp.
v. Morgan, 536 U.S. 101 (2002); see also Agosto, 982 F.3d at
103-104 (finding no hostile work environment where a principal
performed a sexually suggestive act while looking at the teacher
plaintiff).  While Fonseca's act was inappropriate and
humiliating, it falls short of having severely or pervasively
"altered the conditions of [Plaintiff's] working environment,"
especially given Max Mara's HR department's prompt response to
Plaintiff's complaint.  Alfano, 294 F.3d at 374; (see Compl.
¶¶ 15, 21-22.) The totality of Fonseca's conduct, including the

"pornstar" remarks, does not rise to the level of severity or pervasiveness necessary to sustain a hostile work environment claim, given the brief duration of the harassment, Max Mara's prompt remedial action, and the absence of any alleged misconduct beyond the initial three days.  See Alfano, 294 F.3d at 374.

Considering the "nature of the workplace environment as a whole," the Court holds Plaintiff fails to state a hostile work environment claim under Title VII.  Kaytor, 609 F.3d at 547. Accordingly, Defendants' Motion is granted with respect to Plaintiff's Title VII hostile work environment claim.

### C.   Plaintiff's Title VII Retaliation Claim

Plaintiff alleges a retaliation claim under Title VII based on her suggested reassignment and her discharge from Max Mara. (See Compl. ¶¶ 17-18, 30.)  Plaintiff's complaints to Max Mara's HR department, CFO, and CEO were protected activities of which Defendant was aware, satisfying the first two elements of her retaliation claim.  (See Compl. ¶¶ 15-16, 24; Ex. B.)  See also Littlejohn, 795 F.3d at 315-16.  The Court next considers both of Plaintiff's asserted adverse employment actions in turn.

First, Plaintiff alleges Max Mara's suggestion that she transfer to either Accounts Payable or the Treasury department was an adverse employment action.  (See Compl. ¶¶ 17-18; Ex. C at 1; Pl. Opp. at 2.)  Reassignment of job duties may constitute a

materially adverse employment action. See Burlington, 548 U.S. at 71; see also Abalola v. St. Luke's-Roosevelt Hosp. Ctr., 2022 WL 973861, at *14 (S.D.N.Y. Mar. 30, 2022) ("Less prestigious assignments could be materially adverse to a reasonable employee[.]") (citation omitted). However, "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 209 (2d Cir. 2006) (quoting Burlington, 548 U.S. at 71).

Max Mara's suggestion that Plaintiff move to a different department does not constitute an adverse employment action. Plaintiff has alleged that the transfer "focused less on accounting and would have led Plaintiff down a less-prestigious career path." (Compl. ¶ 17.) However, the alleged adverse employment action never occurred because Plaintiff was never actually reassigned. In addition, Plaintiff's allegations indicate that Max Mara's suggestion she transfer was an "option" for Plaintiff to select if she so desired.[10] Under the circumstances, Plaintiff has failed

---

[10] Plaintiff is inconsistent regarding the level of commitment made by Max Mara's CFO to transfer her to the treasury department. The Complaint indicates the transfer was "suggested," (Compl. ¶ 17; see also Pl. Opp. at 2) but the "option" was eliminated when Macchia resigned (Compl. ¶ 19). However, certain incorporated documents indicate Plaintiff believed she was "promised" a

to allege the suggested transfer "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Kessler, 461 F.3d at 207.[11]  Consequently, Plaintiff's potential reassignment was not an adverse employment action.

Second, Plaintiff argues Max Mara's discharge of her employment constitutes an adverse employment action.[12]  As discussed in the context of her Title VII discrimination claim, Plaintiff has failed to allege plausibly she was terminated and

___

transfer, (Ex. E at 8) or offered the opportunity at her option, (Ex. C at 1).  Drawing all inferences in Plaintiff's favor, the allegation is at most that Max Mara suggested a transfer at Plaintiff's option that Plaintiff viewed as unfavorable, but never actually occurred.

[11] In the context of summary judgment motions, the Court of Appeals has found no adverse employment action where plaintiffs offered only their opinion that a reassignment was materially adverse. See Dillon v. Morano, 497 F.3d 247, 254-55 (2d Cir. 2007) (affirming summary judgment where a plaintiff provided no evidence beyond his own opinion that a reassignment to a less prestigious role was a materially adverse action); Dziedzic v. State Univ. of N.Y. at Oswego, 648 F. App'x 125, 128 (2d Cir. 2016) (summary order) (affirming summary judgment where the there was no evidence, other than the plaintiff's opinion, that his reassignment was less prestigious).

[12] In the section of the Complaint alleging retaliation in violation of Title VII, Plaintiff asserts that Max Mara retaliated against her by "altering the terms and conditions of her employment because she repeatedly voiced her concerns" (Compl. ¶ 68), but does not specifically reference her discharge from Max Mara, (see Compl. ¶¶ 63-71).  In contrast, Plaintiff's NYSHRL and NYCHRL claims explicitly state that "Defendant unlawfully retaliated against her, by ending her employment." (Compl. ¶¶ 74, 79; see also Compl. ¶¶ 75, 80.)  However, Plaintiff's opposition brief states, seemingly for all retaliation claims, that she "suffered a materially adverse action when Defendants ended her employment." (Pl. Opp. at 9.)  Despite the ambiguity in the pleadings, the Court construes Plaintiff's Title VII claim to allege Max Mara retaliated against Plaintiff by ending her employment.

therefore cannot establish the end of her employment was an adverse employment action.  See supra Part III(B)(2).  Therefore, Plaintiff does not sufficiently allege a retaliation claim, and Defendants' Motion is granted with respect to Plaintiff's Title VII retaliation claim.

**D. NYSHRL and NYCHRL Claims**

The Court may decline to exercise supplemental jurisdiction over a claim where all claims over which it had original jurisdiction have been dismissed.  See 28 U.S.C. § 1367(c)(3).  While district courts have discretion to exercise supplemental jurisdiction over remaining state law claims, when "all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction[.]" Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 81 (2d Cir. 2018) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).  In conducting such an evaluation, courts balance "judicial economy, convenience, fairness, and comity." Id. at 81.  "In the context of employment discrimination cases, courts in this district routinely decline to exercise supplemental jurisdiction over state- and city-law claims when the federal claims have been dismissed." Munck v. Simons Foundation, 2024 WL 4307776, at *9 (S.D.N.Y. Sept. 26, 2024); see, e.g., Charley v. Total Office Plan. Servs., Inc., 202 F. Supp. 3d 424, 432 (S.D.N.Y. 2016).

Furthermore, courts may decline to exercise supplemental jurisdiction over claims that present novel or complex issues of state law. See 28 U.S.C. § 1367(c)(1). Here, the Court holds that exercising supplemental jurisdiction over Plaintiff's remaining claims would be inappropriate because of unsettled state law regarding the NYSHRL and NYCHRL pleading standards. See, e.g., Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (explaining that "claims under the City HRL must be reviewed independently from" and "more liberally" than their federal counterparts); McHenry, 510 F. Supp. at 68 (observing that "[i]n August 2019, the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, [more] liberally" (internal quotation marks omitted)); Shaughnessy, 2024 WL 1350083, at *10 (noting that it is unclear if the 2019 amendment made the NYCHRL and NYSHRL pleading standards the same); Nezaj v. PS450 Bar & Rest., 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024) (questioning the same). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims. See Daniel v. City of New York, 2021 WL 5988305, at *11 (S.D.N.Y. Dec. 16, 2021) (declining for similar reasons to exercise supplemental jurisdiction over NYSHRL and NYCHRL claims after dismissing Title VII claim at the Rule 12(b)(6) stage); Pompey-Primus v. Success Acad. Charter Sch., Inc., 2022 WL 504541, at *10 (S.D.N.Y. Feb. 17, 2022) (same).

**IV.**    <u>**Conclusion**</u>

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings [dkt. no. 35] is GRANTED.  The Clerk of Court is respectfully directed to close docket entry 35 and to mark the action closed and all pending motions denied as moot.

**SO ORDERED.**

Dated:    January 10, 2025
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge